UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM VINIDA HUMPHRIES

        Debtor,
_____/

B.O.C. LAW GROUP, P.C., d/b/a The Law        Case Number 10-14928
Firm of Orlow and Cardasis        Bankr. Number 10-41299
       Honorable David M. Lawson

        Appellant,
v.

KRISPEN S. CARROLL, Chapter 13 Trustee,

        Appellee.
_____/

## **OPINION**

      The bankruptcy court denied the appellant law firm's fee application at the conclusion of the Chapter 13 proceedings below because that court believed the fee agreement between the debtor and her lawyers was void as a matter of law. The court reached that conclusion after finding that the written fee agreement was not signed within "5 business days after the first date on which [the law firm] provide[d] any bankruptcy assistance services to" the debtor. 11 U.S.C. § 528(a)(1). The bankruptcy court believed that 11 U.S.C. § 526(c)(1) mandated that result. This Court disagrees. The five-business-days provision in section 528(a)(1) is addressed to the conduct of a "debt relief agency," not to the contents of a "contract for bankruptcy assistance." Therefore, the failure to cause a written agreement to be executed within five days does not mandate voiding the agreement. The Court will vacate the order denying the appellant's fee application and remand to the bankruptcy court for further proceedings.

I.

This case deals with the interpretation of provisions regulating debt relief agencies that were added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Under those provisions, a "debt relief agency," which is broadly defined to include law firms that represent bankruptcy debtors, *see* 11 U.S.C. § 101(12A); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1333 (2010) (holding that "attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies within the meaning of the BAPCPA"), is prohibited from: failing to perform promised services, 11 U.S.C. § 526(a)(1); making false or misleading statements, *id.* § 526(a)(2); misrepresenting the services to be provided or the benefits and risks of bankruptcy proceedings, *id.* § 526(a)(3); and counseling a prospective debtor to incur more debt before filing for bankruptcy, *id.* § 526(a)(4). A debt relief agency is required to: give written notice of various forms of bankruptcy relief under Title 11 and the availability of credit counseling services, *id.* § 527(a)(1) (citing 11 U.S.C. § 342(b)(1)); furnish additional written notice of the debtor's obligation to provide truthful, accurate, and thorough information to the bankruptcy court regarding all assets, income, and liabilities; *id.* § 527(a)(2); provide yet additional notice concerning the lawyer's obligation and the debtor's rights as to creditors and self-representation, *id.* § 527(b); maintain a copy of the written notices furnished to the debtor, *id.* § 527(d); make certain specific disclosures in any advertisement for debt relief services, *id.* § 528(a)(3), (4) & (b)(2); and execute a written contract for legal services within five business days after first furnishing any bankruptcy assistance, *id.* § 528(a)(1).

The written fee agreement required by section 528(a)(1) must contain a clear explanation of "(A) the services such agency will provide to such assisted person; and (B) the fees or charges for

such services, and the terms of payment[.]" *Id.* § 528(a)(1). A written fee agreement may *not* contain: any waivers of rights afforded the debtor as against debt relief agencies, 11 U.S.C. § 526(b); false statements, *id.* § 526(a)(2); or misrepresentation of services to be provided or benefits available under the Bankruptcy Code, *id.* § 526(a)(3).

The BAPCPA amendments also provide sanctions and remedies against debt relief agencies. First, if the fee contract "does not comply with the material requirements" of these statutes, then the contract "shall be void and may not be enforced by any Federal or State court." 11 U.S.C. § 526(c)(1). Second, if the debt relief agency fails to comply, it may be required to disgorge fees and charges in connection with the bankruptcy representation and may be liable for actual damages, attorney's fees, and costs. *Id.* § 526(c)(2). In addition, the state attorney general may seek an injunction and damages for debtors when there is a violation, *id.* § 526(c)(3), and a court on its own motion may impose an injunction and civil penalties for intentional violations, *id.* § 526(c)(5).

In this case, the appellant law firm, B.O.C. Law Group, P.C. (which does business as the Law Firm of Orlow and Cardasis), first met with debtor Kim Vinida Humphries on November 17, 2009. William R. Orlow, an attorney with the law firm, conducted an initial consultation on that day. The appellant's brief states that during the consultation, Orlow reviewed Humphries's financial situation, advised her of potential bankruptcy options, and provided her with a written estimate of attorney's fees, but that Humphries wanted to consider her options and did not retain B.O.C. at that time. Appellant's Br. at 1-2. However, the appellant's disclosure of services in its application for pre-confirmation fees tells a slightly different story. William Orlow's entry on November 17, 2009 states:

> Initial office conference with client. Review of debts, interview sheet, initial work
> on Schedules and estimated Plan payments. Client will obtain all information to

> complete necessary forms for filing of Petition. Will file remainder of Schedules once all information is collected and reviewed. Reviewed bankruptcy time frame and court proceedings required.

Appellant's Designation of Docs. for Appeal, Ex. ii, Application for Pre-Confirmation Fees and Costs at 14.

Orlow ultimately recommended that Humphries file for bankruptcy under Chapter 13 because she wished to keep her house and retain two rental properties (she had four rental properties). Humphries returned to B.O.C.'s office on December 15, 2009 to sign a fee agreement with B.O.C. William Orlow's December 15, 2009 entry on B.O.C.'s application for pre-confirmation fees states, "Office conference with client. Client brought in additional financial documents to review with Attorney. Fee agreement reviewed and signed." *Ibid.* The fee agreement does not disclose the cost of services provided prior to the execution of the written agreement, although the appellant's application for fees indicates that it is seeking $520 for those two hours of William Orlow's time. The fee agreement complies with 11 U.S.C. § 528(a)(1) in all other respects, and the Trustee does not argue otherwise.

Humphries filed a voluntary Chapter 13 petition on January 18, 2010. It included secured debts in the amount of $322,801.86, and unsecured debts in the amount of $47,060.33. Humphries filed an amended Plan on April 19, 2010. The bankruptcy court entered an order confirming the Plan on September 25, 2010.

On July 27, 2010, Humphries submitted an affidavit that stated she had reviewed the appellant's application for pre-confirmation fees and approved of the fees requested. The next day, B.O.C. filed an application for pre-confirmation fees and costs for work from November 17, 2009, the date of the initial consultation, through the date of confirmation. B.O.C. requested fees and costs

totaling $6,349.67 ($7,349.67 in fees and expenses less $1,000 paid as a retainer). The Trustee filed four objections, arguing that B.O.C. should not be compensated for: (1) services rendered prior to the execution of the fee agreement; (2) the review of unsecured proof of claims filed in Humphries's case; (c) any work completed in prosecution of Humphries's adversary proceeding due to attorney error — the error led to a re-opening of the adversary proceeding; or (d) reviewing a transfer of claim filed by a creditor.

The Bankruptcy Court held the initial hearing on the fee application on September 22, 2010. The court, *sua sponte*, raised the issue of whether B.O.C.'s request complied with 11 U.S.C. §§ 526-528, and instructed B.O.C. and the Trustee to submit written briefs. On November 30, 2010, Humphries submitted the following affidavit.

> 1. I am the Debtor in the above action, I have knowledge and information in the above captioned matter and if called as a witness, I can competently testify to the same.
> 2. That on November 17, 2009, I met with William R. Orlow at the Law Office of Orlow and Cardasis. The purpose of this meeting was to consult with Mr. Orlow concerning the possibility of filing bankruptcy.
> 3. At this consultation, Mr. Orlow reviewed my financial data, and provided me his advice as to my financial options, including, but not limited to, filing either a Chapter 7 or 13 Bankruptcy.
> 4. Mr. Orlow also advised me of all necessary documentation that would be required to file a bankruptcy petition, and the necessity of provided full and accurate disclosure of the complete state of my financial affairs.
> 5. That at the November 17, 2009 consultation, Mr. Orlow advised me that filing Chapter 13 was my best option, as I wished to retain my residence and two rental properties. Mr. Orlow provided me with a written estimate of anticipated fees and costs in filing such a bankruptcy. This estimate included attorney fees for preparing my Chapter 13 case, court fees and the cost of obtaining a pre-filing credit counseling course.
> 6. That I elected not to retain Mr. Orlow on November 17, 2009. I wished to take additional time to consider my options as presented to me at the consultation, as well as to save the necessary funds to formally retain Orlow and Cardasis, pursuant to the written estimate of fees provided to me.
> 7. That on December 15, 2009, I returned to Orlow and Cardasis and advised the firm that I wished to retain it to represent me in a Chapter 13 Bankruptcy Proceeding.

> 8. That on December 15, 2009, I signed a retainer and fee agreement that was consistent with the schedule of fees and costs disclosed by Mr. Orlow to me on November 17, 2010.
> 9. That I am of the belief that Orlow and Cardasis represented my interests diligently, and as a result, I have no objections to Orlow and Cardasis' requested fees being approved by the Court consistent with the fee agreement I executed with William Orlow, and Orlow and Cardasis.
> 10. That pursuant to 11 U.S.C. §526(c)(1), I request that this Honorable Court enforce the fee agreement I signed with William R. Orlow.

Appellant's Designation of Docs. for Appeal, Ex. vv, Debtor's Second Aff. in Support of Fee Application and Enforcement of Attorney-Debtor Retainer Agreement at 1.

Ultimately, the bankruptcy court denied B.O.C.'s fee application in its entirety. The court cited the five-business-days requirement of 11 U.S.C. § 528(a), determined that B.O.C. provided "bankruptcy assistance" to Ms. Humphries at the initial conference on November 17, 2009, and found that a written fee agreement was not signed until December 15, 2009, nearly a month after services were first provided. The court then found that the five-business-days provision was a material requirement of the contract, and applied 11 U.S.C. § 526(c)(1) to void the fee agreement. The court then reasoned, "Because the firm failed to execute a written fee agreement within five days of providing bankruptcy assistance to Humphries, § 526(c)(1) prohibits it from enforcing it. . . . The Court must also reject Counsel's argument that fees can nevertheless be awarded pursuant to § 330(a)(4)(B). That result would make the statutory prohibition on enforcing the fee agreement meaningless." *In re Humphries*, No. 10-41299, 2010 WL 5101036, at *2 (Bankr. E.D. Mich. Dec. 8, 2010).

B.O.C. filed a timely notice of appeal of the bankruptcy court's decision to deny its application for pre-confirmation fees.

II.

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a)(1); *Pension Fund v. U.S. Truck Co. Holdings, Inc.* (*In re U.S. Truck Co. Holdings*), 341 B.R. 596, 599 (E.D. Mich. 2006). "[A]n order conclusively granting or denying attorney's fees to a debtor's attorney constitutes such a final order." *In re Campbell*, 396 B.R. 500, 503 (E.D. Mich. 2008) (citing *In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991)). "The bankruptcy court's findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed de novo." *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 935-36 (6th Cir. 2010) (citing *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004)).

A.

The main question presented for review is whether 11 U.S.C. § 528(a), which requires a bankruptcy law firm to enter into a written agreement with the debtor within "5 business days after the first date on which [the law firm] provide[d] any bankruptcy assistance services to" the debtor, is a "material requirement[]" imposed on a "contract for bankruptcy assistance" by 11 U.S.C. § 526(c)(1). Before addressing that question, however, there are some preliminary arguments to be disposed of.

First, B.O.C. contends that the Trustee has no standing to contest the application of section 526(c)(1) to the fee agreement in this case because no objection to the fee request on that ground was presented to the bankruptcy court. That argument fails for three reasons. First, "it is . . . settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *United States v. American Ry. Express Co.*, 265 U.S. 425, 435 (1924); *see also Olympic Fastening Sys., Inc. v. Textron Inc.*,

504 F.2d 609, 617 (6th Cir. 1974). Although *In re Reymer*, 403 B.R. 475 (E.D. Mich. 2009), may suggest otherwise, the failure to advance an argument raised *sua sponte* by the lower court does not amount to a waiver of that issue on appeal, especially when the issue is the central focus of the appeal. Second, the Trustee actually addressed the issue in a supplemental brief after the bankruptcy court adjourned the hearing to allow additional briefing. Third, although the Trustee did not specifically cite section 528(a) in his initial papers, he did object to the charge for services on November 17, 2009 on the ground that the "fee agreement . . . was not signed by the debtor until December 15, 2009." Appellant's Designation of Docs. on Appeal, Ex. ll, Trustee's Objection to Fee Application.

Second, B.O.C. argues that the bankruptcy court erred by raising the question of section 528(a)'s application on its own. That claim must be rejected because B.O.C. never developed an argument on the point, and therefore the issues is waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995))). Moreover, the bankruptcy court always retains the authority to "sua sponte[] tak[e] any action or make[] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

Third, B.O.C. takes the position that it did not violate the five-business-days requirement of 11 U.S.C. § 528(a) because it did not actually render any bankruptcy assistance to Ms. Humphries at the initial consultation on November 17, 2009. Although "bankruptcy assistance" is broadly

defined under 11 U.S.C. § 101(4A), B.O.C. maintains that the initial conference amounted to no more than an explanation of the process, costs, and fees so that Ms. Humphries could decide whether to hire the law firm. Actual services were not furnished, says B.O.C., until December 15, 2009 when Ms. Humphries hired B.O.C. That argument has some purchase. After all, every encounter by a law firm with a prospective client does not amount to providing legal services, and clients certainly may shop around before making a hiring decision. To suggest that the five-day window is opened whenever a client talks to a law firm would distort the meaning of section 528(a) and serve no useful purpose. B.O.C.'s argument breaks down, however, when one considers William Orlow's time entry for November 17 that states that he started preparing bankruptcy schedules, coupled with the fact that B.O.C. actually charged for the time and work performed on that day. To suggest that no bankruptcy services were provided, and then seeking compensation for those same services, is an untenable argument.

B.

Turning to the main issue, B.O.C. contends that the bankruptcy court misapplied 11 U.S.C. § 526(c)(1) to render void the December 15, 2009 fee agreement between Ms. Humphries and B.O.C. That section reads in full:

> Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of this section, section 527, or section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person.

11 U.S.C. § 526(c)(1). B.O.C. contends that the five-day requirement is not a "material" requirement of the contract, and the bankruptcy court's determination that *all* the requirements of sections 526, 527, and 528 are "material" gives no meaning to that term. In support of that argument, B.O.C. relies heavily on another decision by a different judge of the bankruptcy court in

*In re Kinsman*, No. 10-57364 (Bankr. E.D. Mich. Dec. 14, 2010) ("If all of the requirements in 526 through 528 are material, then there's no purpose to the word 'material' in 526(c)(1). The statute could just as easily have said any contract that doesn't comply with the requirements of Section 526, 527, or 528 shall be void and may not be enforced, which is — essentially the trustee wants me to read the word 'material' I think out of the statute by saying that any failure to comply with any of the requirements of Section 526 through 528 results in the contract being determined to be void and unenforceable."). In *Kinsman*, the court concluded that the five-day requirement was not material, and therefore the failure to sign a fee agreement within that time frame (the law form missed the deadline by one day) was not fatal to the fee petition.

There is a problem with this approach. By focusing on whether the five-day requirement is "material," the bankruptcy court — in both this case and in *Kinsman* — ignored the precise language set out in section 526(c)(1) and the context in which the provision appears in the scheme of regulating debt service agencies. "Congress enacted BAPCPA . . . as a comprehensive reform measure to curb abuses and improve fairness in the federal bankruptcy system." *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 85 (2d Cir. 2010) (citing *Milavetz*, 130 S. Ct. at 1329-30, and H.R. Rep. No. 109-31, *reprinted in* 2005 U.S.C.C.A.N. 88, 89). Sections 526, 527, and 528 are the three sections added by BAPCPA aimed at curbing "abusive practices undertaken by attorneys as well as other bankruptcy professionals." *Milavetz*, 130 S. Ct. at 1332 n.3. As noted above, these three sections set out the required and prohibited practices for debt relief agencies, together with the mandatory and forbidden contents of the documents — contracts and notices — that they use. Section 526(c) prescribes the sanctions and remedies that may be imposed if a debt relief agency runs afoul of any of these requirements. Subsection 526(c)(1) deals with "contract[s] for bankruptcy

assistance," and says that if such a contract does not measure up, it is void and cannot be enforced against the debtor. Subsection 526(c)(2) deals with the conduct of debt relief agencies (including law firms) themselves, and it sets forth a list of remedies that may be directed against them if they "intentionally or negligently fail[] to comply with any provision of" these three sections, "provide[] bankruptcy assistance to an assisted person in a case or proceeding under this title that is dismissed or converted to a case under another chapter of this title because of such agency's intentional or negligent failure to file any required document," or "intentionally or negligently disregard[] the material requirements of this title or the Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 526(c)(2)(A)-(C). These two sanctions provisions are separate and distinct, but the bankruptcy court's treatment of the five-business-days provision in section 528(a)(1) conflates the two subsections.

The five-business-days requirement in section 528(a)(1) is directed at the conduct of a debt relief agency, not the contents of the agreement for services. In other words, that provision is a requirement of the agency, not a requirement of the contract. The requirements of the contract are described in the provisions of sections 526, 527, and 528 that prescribe the mandatory and prohibited terms of the agreement for services. The five-business-days language does not set out what must be in such an agreement; it states *when* the agency must execute the agreement — "not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed." 11 U.S.C. § 528(a)(1). The remedy for a violation of that provision is set forth in subsection 526(c)(2), not subsection 526(c)(1).

The authority Congress granted to avoid contracts for services in subsection 526(c)(1) is triggered only when the "contract . . . does not comply with the material requirements" of the statutes.  11 U.S.C. § 526(c)(1).  "The plain meaning of legislation should be conclusive, except in rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  *Bates v. Dura Automotive Sys., Inc.*, 625 F.3d 283, 286 (6th Cir. 2010) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)); *see United States v. Boucha*, 236 F.3d 768 (6th Cir. 2001) (stating the familiar rule of statutory construction that "[t]he language of the statute is the starting point to interpretation, and it should also be the ending point if the plain meaning of that language is clear").  Courts "must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."  *Cowherd v. Million*, 380 F.3d 909, 913 (6th Cir. 2004) (quotation marks omitted).  By applying a contract-violation remedy to an agency violation, the bankruptcy court rendered meaningless the distinction Congress made between faulty documents and nonconforming conduct in BAPCPA's remedial scheme.

The Court concludes, therefore, that the bankruptcy court erred when it voided B.O.C.'s fee agreement with the debtor on the ground that it was executed more than five days after debt relief services were rendered.  Because the bankruptcy court concluded that the fee agreement was unenforceable, it did not consider the Trustee's other arguments relating to the fee petition, such as whether fees for services rendered on November 17, 2009 should be disallowed.  That relief is available under subsection 526(c)(2)(A).  *See also* 11 U.S.C. § 330(a)(2) ("The [bankruptcy] court may, on its own motion . . . award compensation that is less than the amount of compensation that is requested."); *In re Busy Beaver Bldg.*, 19 F.3d 833, 841 (3rd Cir. 1994) ("[T]he bankruptcy court

has a duty to review fee applications, notwithstanding the absence of objections . . ., a duty which the Code does not expressly lay out but which we believe derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest."). However, where, as here, the fee agreement is not rendered void as a non-conforming document under subsection 526(c)(1), denying fees altogether is a harsh remedy for a technical violation of the Bankruptcy Code, especially when the debtor expresses satisfaction with the services rendered and the fee agreement (if not the law firm itself) conforms to the requirements ushered in by BAPCPA.

B.O.C. is entitled to "reasonable compensation . . . for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth" in the Bankruptcy Code. 11 U.S.C. § 330(a)(4)(B). The court will remand this case to the bankruptcy court for an appropriate determination of the appellant's fee petition under the appropriate factors.

III.

Accordingly, it is **ORDERED** that the order of the bankruptcy court denying appellant B.O.C. Law Group, P.C.'s application for fees and expenses is **VACATED**.

It is further **ORDERED** that the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: April 19, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 19, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---